IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTEN BEHRENS, ESQUIRE, as Administratrix of the Estate of H.J., a deceased minor, c/o Kline & Specter, P.C. 1525 Locust Street Philadelphia, PA 19102 *Plaintiff* | CIVIL ACTION Civil Action No. |
| v. UNITED STATES OF AMERICA, *Defendant* | |

## **COMPLAINT**

Plaintiff, Kristen Behrens, Esquire, as Administratrix of the Estate of H.J., a deceased minor, files this Complaint against United States of America (Defendant). Plaintiff alleges as follows:

## **JURISDICTION AND VENUE**

1.     This case sounding in medical malpractice involves a claim for wrongful death brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act (FTCA), 28 U.S.C. §1346(b)(1).

2.     Jurisdiction is based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1346, et seq. (FTCA litigation) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.     Venue is proper because the acts and omissions that form the subject matter of this action occurred in this judicial district.

4.      Plaintiff brings this action after having properly presented her administrative claim to the appropriate federal agency and exhausting all administrative remedies as required by the FTCA.

**PARTIES**

5.      Decedent Hope Jones is a deceased minor who was born on May 5, 2019, and died on July 12, 2022.  At all relevant times, Hope Jones was a citizen of the Commonwealth of Pennsylvania.

6.      Kristen L. Behrens, Esquire, is a licensed attorney in the Commonwealth of Pennsylvania with a business address at 1650 Market Street, Suite 1200, Philadelphia, Philadelphia County, Pennsylvania 19103, and has been appointed to serve as Administratrix of Decedent's estate.

7.      Defendant United States of America, through its agency the Department of Health and Human Services (hereinafter "HHS"), operates and funds Philadelphia FIGHT Community Health Centers (hereinafter "Philadelphia FIGHT"), a federally qualified health center located at 1 Graduate Plaza, 1800 Lombard Street, Suite 505, Philadelphia, Pennsylvania 19146.

8.      Philadelphia FIGHT and its employees, including physicians and nurses involved in the care of Hope Jones, were at all relevant times deemed employees of the Public Health Service pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(g)–(n).  Accordingly, they are deemed federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680.

9.      Philadelphia FIGHT includes its agents, ostensible agents, servants, and employees Mario Cruz, M.D. (hereinafter "Dr. Cruz"), Lisa Knoflicek, M.D. (hereinafter Dr. Knoflicek"), Kim Lewis, R.N. (hereinafter "RN Lewis"), Ruth Martin, R.N. (hereinafter "RN

Martin"), Leland Perzanowski, R.N. (hereinafter "RN Perzanowski"), the Pediatric and Adolescent Health Center, a medical facility and/or medical practice at 1207 Chestnut Street, Philadelphia, PA 19107, as well as all other employees, agents, ostensible agents, workmen, and servants.

10.     As more fully set forth herein, the claim asserted against this Defendant is for professional negligence of its agents, ostensible agents, servants, and employees.

11.     All physicians, specialists, fellows, residents, nurses, technicians, and/or other professional and non-professional personnel of the United States of America and specifically Philadelphia FIGHT Community Health Centers, including but not limited to Dr. Mario Cruz, Dr. Lisa Knoflicek, RN Kim Lewis, RN Ruth Martin, and RN Leland Perzanowski, who were responsible for monitoring, treating, and caring for Hope Jones between June 2019 and July 2022 were acting as duly authorized, actual, apparent, and/or ostensible agents, servants, and employees of the United States of America through Philadelphia FIGHT Community Health Centers acted within the course and scope of their employment and/or agency with the United States of America.

12.     The identities of any other individuals involved in Hope Jones' care cannot be ascertained from the medical records, and this information is in the exclusive custody and control of Defendant and will be the subject of discovery.

13.     At all times relevant hereto, Hope Jones was under the medical care, treatment, and attendance of Defendant directly or through its agents, servants and/or employees including ostensible agents identified above and under their direct control or right to control.

## GENERAL ALLEGATIONS

14.     Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

15.     Decedent Hope Jones was born on May 28, 2019, at Einstein Medical Center to her biological mother Trenae Jones and her biological father Geno Laws.

16.     Trenae and Hope Jones tested positive for marijuana after Hope's birth, prompting an investigation by the Philadelphia Department of Human Services (hereinafter "DHS").

17.     DHS determined that Trenae Jones lacked appropriate housing and the ability to provide parental care for Hope. Accordingly, Hope was placed under the care and supervision of DHS and became a Philadelphia FIGHT Community Health Centers patient under the care of Dr. Cruz, her Primary Care Physician.

18.     Hope was first examined by Dr. Mario Cruz one week after her birth, on June 4, 2019. On that visit, Hope weighed 6.44 pounds, placing her in approximately the 12th percentile for weight. Thereafter, Hope was seen regularly for wellness examinations. During the first fifteen months of her life, she was consistently described as well-developed and well-nourished, with no reported concerns regarding her diet, feeding, or growth. Her weight and height increased appropriately and progressed as expected for a child of her age.

19.     At the age of fifteen months, Hope was examined by Dr. Cruz for her fifteen-month wellness visit.  He noted that her weight increased to 28.43 pounds, which was within the 98th percentile. He noted that she had a "good appetite" and that there was no feeding problems reported to him during the visit.

20.     In November of 2020, Hope was placed in the home of kinship foster parent Kiana Casey where she lived until her tragic and preventable death on July 12, 2022.

21.     On January 29, 2021, at age twenty months, weeks after placement with Kiana Casey, Hope was examined by Dr. Knoflicek, who noted that Hope was "well developed" and

"well nourished." Contrary to Dr. Knoflicek's notation, Hope's weight decreased by more than one pound to 26.97 pounds and her weight percentile decreased to the 86th percentile. That was a significant decrease for a child Hope's age, yet this decrease went unrecognized by the medical team.

22.     On May 24, 2021, at twenty-three months old, Hope was examined by Dr. Knoflicek.  Her vitals were taken by RN Lewis, who noted that her weight was 27.78 pounds, and she dropped from the 86th percentile in weight to the 77th percentile.  It was also reported that Hope was a "picky eater."

23.     On or around August 30, 2021, Kiana Casey reported to The NET that, when she went to check on Hope at night while Hope was sleeping, she observed Hope sitting up in bed. Hope then handed Casey her front tooth, which was fully intact and attached to the root. Casey reported that Hope did not cry, appear distressed, or express any discomfort.

24.     On September 3, 2021, Hope was seen at Philadelphia FIGHT dental for evaluation. According to the progress note, a few days prior, Hope walked up to Kiana Casey and handed her tooth to her without crying or appearing to be in any pain.

25.     On November 24, 2021, at the age of two years and five months, Hope was seen for a wellness visit and examined by Dr. Knoflicek. Her vitals were taken by RN Martin. Her weight again decreased more than one pound to 26.68 pounds, and she dropped from the 77th percentile in weight to 29.73 percentile. During this visit, Kiana Casey reported she had concerns about Hope trying to eat her own feces. She also reported that Hope sometimes eats too fast and would periodically vomit.

26.     Dr. Knoflicek did not make any reference to Hope's sudden tooth loss.

27. During that visit, Dr. Knoflicek diagnosed Hope with abnormal gait and referred Hope to an orthopedic pediatric physician.

28. Dr. Knoflicek failed to recognize that the sudden changes in Hope's gait were clinical indicators of severe weight loss and underlying caloric deprivation, starvation, and neglect.

29. Dr. Knoflicek failed to recognize the significance of Hope's fast eating and vomiting as signs of caloric deprivation and starvation.

30. Dr. Knoflicek failed to recognize that Hope's abrupt decrease in weight and corresponding drop in weight percentile represented a clear indication of malnutrition, caloric deprivation, and starvation.

31. Additionally, Dr. Knoflicek and RN Martin failed to recognize that Hope's attempt to eat her own feces was a manifestation of severe hunger and neglect, indicating that she was not being adequately fed and was attempting to nourish herself by any means available.

32. Despite these concerning findings at Hope's November 24, 2021 appointment, Dr. Knoflicek and RN Martin failed to take appropriate action. They did not inquire into the possibility of physical abuse, did not ask whether there was any history of abuse in the household, and did not counsel Ms. Casey regarding the possibility that Hope's tooth injury was the result of abuse. They also failed to address the possibility that Hope's significant weight loss was due to starvation, did not investigate her sudden weight loss and abnormal eating behaviors, and did not report any suspicion of abuse or neglect to ChildLine or to any other authority.

33. On December 9, 2021, Hope was taken to the Children's Hospital of Philadelphia (hereinafter "CHOP") for dental trauma after she lost a second tooth from an alleged fall.

34.    On June 1, 2022, at the age of three years and eight months, Hope was seen by Dr. Knoflicek for a follow-up visit. There is no documentation that a physical examination was performed; however, her vital signs were recorded by RN Perzanowski, who noted that Hope's weight was 25.13 pounds, reflecting a 1.55-pound decrease since her prior visit on November 24, 2021. Her weight was in the 3rd percentile, and her BMI was recorded as 0.48, which appeared in red in the medical chart, indicating an abnormal and emergent result.

35.    This 1.55-pound decrease represented a loss of approximately five percent of Hope's total body weight, a significant and alarming amount of weight loss for a child of her age and size over such a short period of time.

36.    Dr. Knoflicek noted that Hope had periodic vomiting with fast eating over the prior two days. Despite this severe decline in weight and clear symptoms of caloric deprivation and starvation, Dr. Knoflicek diagnosed Hope with Development Delay and with "flat foot" of both the right and left feet and recommended that she return in one year for a wellness visit.

37.    Dr. Knoflicek again failed to recognize the significance of Hope's drastic weight loss, even though her weight and weight percentile were clearly noted in the color red to indicate emergent results.

38.    She also failed to recognize the significance of Hope's fast eating and vomiting as a sign of caloric deprivation, starvation, and severe neglect.

39.    Despite these concerning findings at Hope's June 1, 2022 appointment, the medical team failed to take appropriate action. They did not inquire into the possibility of physical abuse, did not ask whether there was any history of abuse within the household, and did not counsel Ms. Casey regarding the possibility that Hope's significant weight loss was the result of starvation or neglect. They also failed to investigate Hope's sudden weight loss and abnormal

eating behaviors and did not report any suspicion of abuse or neglect to ChildLine or to any other authority.

40.     On June 10, 2022, Hope was taken to CHOP for an orthopedic visit. While at CHOP, Hope's weight was noted to be 24.5 pounds, less than the 1st percentile.

41.     On July 12, 2022, Hope was rushed to the hospital where she was pronounced dead. Hope's remains were examined by the Philadelphia Medical Examiner's Office, and it was determined that her cause of death was Multiple Blunt Impact Injuries, and the manner of her death was Homicide.

42.     The post-mortem evaluation revealed the following injuries:

    A.  Head and Neck

        a.  Forehead, 2 x 1-inch contusion

        b.  Forehead, 2 x 1-inch hematoma

        c.  Parietal subgalea space, midline hemorrhages

        d.  Right eye, lateral corner, 1-1/4-inch linear abraded contusion

        e.  Right eye, under lower eyelid, ½-inch old scar

        f.  Right eyebrow, ¼-inch old scar

        g.  Under the chin, ½ and ¼-inch old scars

        h.  Lower inner lip, three ¼-inch old lacerations

    B.  Torso

        a.  Large thoraco-abdominal region contusion

        b.  Lower abdomen pelvic area, contusion

        c.  Posterior torso, subcutaneous hemorrhages

        d.  Anterior abdomen, ¼ to 1-inch multiple scratches

    e.  Subcutaneous hemorrhages, gluteal regions

    f.  Deep gluteal muscle hemorrhages

    g.  Rib fracture, right 8th, 9th and 10th posteriorly

    h.  Rib fracture, left 11th laterally

    i.  Old healing fractures

    j.  Hemoperitoneum of 200 milliliters

    k.  Transverse colon, contusion

    l.  Stomach, lesser curvature, hemorrhages contusion

    m.  Transected head of pancreas

    n.  Pancreas, contusion

    o.  Right kidney, contusion

    p.  Peri-renal fat, right and left, hemorrhages

    q.  Spleen, fibrinous adhesion

    r.  Hemidiaphragms, contusions

C.  Extremities

    a.  Subcutaneous and deep hemorrhages, both arms

    b.  Subcutaneous hemorrhages, both forearms

    c.  Subcutaneous hemorrhages, both thighs

    d.  Diffuse hemorrhage, left knee cup

    e.  Foci of subcutaneous hemorrhages, both legs

43.    Hope's continued failure to appropriately gain weight and severe weight loss was well documented.

44.     There were no medical causes identified for Hope's severe weight loss. Hope's malnutrition was so severe and prolonged that it also impacted her height growth velocity, as can be visualized on the growth chart below:



45.     This indicates that she was not receiving enough calories for her bones to grow appropriately.

46.     Defendant, by and through its agents, the physicians and nurses at Philadelphia FIGHT noted during Hope's visits on January 28, 2021, May 24, 2021, November 24, 2021, and June 1, 2022, that Hope was a child "at risk for abuse and neglect."

47.     Despite well-documented weight loss, inconsistent eating behaviors, traumatic loss of two teeth, and identified concerns of being "at risk for abuse and neglect," no additional measures were taken by the Defendant, by and through its agents, the physicians and nurses at Philadelphia FIGHT, to ensure the safety and well-being of Hope.

48.    Dr. Mario Cruz, her Primary Care Physician, and Dr. Lisa Knoflicek, her treating pediatrician, were required to assess Hope's development and monitor for indications of a failure to thrive.

49.    As her treating registered nurses, RN Lewis, RN Martin, and RN Perzanowski were required to assess Hope's development and monitor for indications of a failure to thrive.

50.    At all relevant times, Hope relied on the knowledge, care, skill, and treatment provided to her by Defendant.

51.    Defendant failed to provide the Decedent with proper care, assessment, and evaluation.

**Defendant United States of America d/b/a Philadelphia FIGHT's Negligent and Reckless Conduct**

52.    Had Philadelphia FIGHT's policies and procedures regarding reporting suspected abuse been consistent with the requirements of Pennsylvania's Child Protective Services Law, the suspected abuse would have been properly reported and the Pennsylvania Department of Human Services, and/or DHS would have taken further action for the protection of Hope.

53.    Had Philadelphia FIGHT properly trained Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski on how to properly identify and report suspected child abuse, the Pennsylvania Department of Human Services, and/or DHS would have taken further action for the protection of Hope.

54.    Had Philadelphia FIGHT's policies and procedures regarding reporting suspected abuse been consistent with the requirements of Pennsylvania's Child Protective Services Law, the suspected abuse would have been properly reported and an investigation into the suspected abuse would have occurred.

55. Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski's material failure to make an oral and written report to the Pennsylvania Department of Human Services pursuant to Pennsylvania's Child Protective Services Law resulted in the fatal injuries to Hope.

56. Had Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski properly reported the suspected abuse to the Pennsylvania Department of Human Services, as Pennsylvania's Child Protective Services Law required, an investigation into the suspected abuse and neglect would have occurred.

57. Had Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski made an oral report to the Pennsylvania Department of Human Services, as Pennsylvania's Child Protective Services Law required, the Pennsylvania Department of Human Services, and/or DHS would have taken further action for the protection of Hope.

58. Had Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski made a written report to the Pennsylvania Department of Human Services, as Pennsylvania's Child Protective Services Law required, the Pennsylvania Department of Human Services, and/ or DHS would have taken further action for the protection of Hope.

59. Had Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski been properly trained by Philadelphia FIGHT on how to properly identify and report suspected child abuse, the Pennsylvania Department of Human Services, and/or DHS would have taken further action for the protection of Hope.

## COUNT I – NEGLIGENCE
**Plaintiff Kristen L. Behrens, Esquire, as Administratrix of the Estate of H.J., Deceased
v. United States of America d/b/a Philadelphia FIGHT**

60.    The preceding paragraphs of this Complaint are incorporated as though fully set forth.

61.    The negligence of Defendant United States of America d/b/a Philadelphia FIGHT by and through its employees, servants, agents, apparent agents, ostensible agents and/or workmen, including Mario Cruz, M.D., Lisa Knoflicek, M.D., Kim Lewis, R.N., Ruth Martin, R.N., Leland Perzanowski, R.N., and the Pediatric and Adolescent Health Center includes the following:

    a.   Failure to maintain a safe pediatric treatment center;

    b.   Failure to select and retain competent pediatric physicians;

    c.   Failure to recognize the significance of Hope's failure to gain weight;

    d.   Failure to recognize the significance of Hope's weight loss;

    e.   Failure to select and retain physicians/nurses competent in the identification, evaluation of signs of caloric deprivation and starvation;

    f.   Failure to recognize the significance of the signs and symptoms of caloric deprivation and deprivation exhibited by Hope such as fast eating, vomiting, attempting to eat her own poop, and becoming a "picky eater";

    g.   Failure to recognize the significance of Hope losing two teeth at the age of two years old in the presence of weight loss and signs of caloric deprivation;

    h.   Failure to recognize the significance of developmental delay in the presence of weight loss and signs of caloric deprivation;

i.  Failure to create policies to ensure that physicians are adequately assessing for signs of caloric deprivation and starvation;

j.  Failure to create and implement policies and procedures to ensure physicians are adequately assessing for signs of caloric deprivation and starvation;

k.  Failure to train employees, agents, and/or servants to identify and act upon signs of caloric deprivation and starvation;

l.  Failure to recognize that Hope was at significant risk for abuse;

m.  Failure to train employees, agents, and/or servants to identify and act upon signs of abuse;

n.  Failure to recognize that Hope was at significant risk for neglect;

o.  Failure to train employees, agents, and/or servants to identify and act upon signs of neglect;

p.  Failure to evaluate, investigate, and report the clear signs and indication of neglect and abuse for assessment of Hope's removal from the care of Kiana Casey;

q.  Failure to formulate, adopt, and/or enforce adequate rules and policies to ensure that children are properly evaluated for child abuse;

r.  Failure to make an oral report of suspected child abuse of Hope;

s.  Failure to make a written report of suspected child abuse of Hope;

t.  Failure to ensure that a written report of suspected child abuse was sent to the Pennsylvania Department of Human Services;

u.  Failure to formulate, adopt and/or enforce adequate rules and policies to ensure that suspected child abuse is properly reported;

     v.   Failure to oversee Dr. Cruz in his evaluation and treatment of Hope;

     w.   Failure to oversee Dr. Knoflicek in her evaluation and treatment of Hope;

     x.   Failure to oversee RN Lewis in her evaluation and treatment of Hope;

     y.   Failure to oversee RN Martin in her evaluation and treatment of Hope; and

     z.   Failure to oversee RN Perzanowski in their evaluation and treatment of Hope.

62.    The negligence of the Defendant by and through its aforementioned agents, servants, workmen and/or employees as set forth above increased the risk of harm to Hope and/or Hope was caused to lose a substantial chance of avoiding harm.

63.    As a direct and proximate result of the negligent acts and/or omissions of Defendant, Hope was caused to suffer severe and fatal injuries as previously set forth herein.

**WHEREFORE**, Plaintiff respectfully demands judgment in their favor and against Defendant, individually, jointly and severally, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages and such other relief as this Honorable Court may deem appropriate.

## COUNT II – NEGLIGENCE PER SE
**Plaintiff Kristen L. Behrens, Esquire, as Administratrix of the Estate of H.J., Deceased
v. United States of America d/b/a Philadelphia FIGHT**

64.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

65.    At all relevant times, Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski were "mandated reporters."

66.    Pursuant to Pennsylvania's Child Protective Services Law provided:

**(a) Mandated reporters.--**The following adults **shall** make a report of suspected child abuse, subject to subsection (b), if the person has reasonable cause to suspect that a child is a victim of child abuse:

(1) A person licensed or certified to practice in any health-related field under the jurisdiction of the Department of State.

(3) An employee of a health care facility or provider licensed by the Department of Health, who is engaged in the admission, examination, care or treatment of individuals.

23 Pa. Stat. and Cons. Stat. Ann. § 6311(a)(1),(3) (emphasis added).

67.    Pennsylvania's Child Protective Services Law further states:

**(b) Basis to report**

(1) A mandated reporter enumerated in subsection (a) **shall** make a report of suspected child abuse in accordance with section 6313 (relating to reporting procedure), if the mandated reporter has reasonable cause to suspect that a child is a victim of child abuse under any of the following circumstances:

(i) The mandated reporter comes into contact with the child in the course of employment, occupation and practice of a profession or through a regularly scheduled program, activity or service.

*Id.* § 6311(b)(1),(i) (emphasis added).

68.    As for the process for reporting, Pennsylvania's Child Protective Services Law states:

**(a) Report by mandated reporter.**

(1) A mandated reporter **shall immediately** make an oral report of suspected child abuse to the department via the Statewide toll-free telephone number under section 6332 (relating to establishment of Statewide toll-free telephone number) or a written report using electronic technologies under section 6305 (relating to electronic reporting).

(2) A mandated reporter making an oral report under paragraph (1) of suspected child abuse **shall also make a written report**, which

> may be submitted electronically, within 48 hours to the department
> or county agency assigned to the case in a manner and format
> prescribed by the department.

*Id.* § 6313(a)(1)-(2) (emphasis added).

69.     Moreover, pursuant to Pennsylvania's Child Protective Services Law:

> A person or official required to report cases of suspected child abuse
> may take or cause to be taken photographs of the child who is subject
> to a report and, if clinically indicated, cause to be performed a
> radiological examination and other medical tests on the child.
> **Medical summaries or reports of the photographs, X-rays and**
> **relevant medical tests taken shall be sent to the county agency** at
> the time the written report is sent or within 48 hours after a report is
> made by electronic technologies or as soon thereafter as possible.

*Id.* § 6314 (emphasis added).

70.     As staff members of a medical facility or other institution, Pennsylvania's Child

Protective Services Law states:

> **Staff members of institutions, etc.--**Whenever a person **is**
> **required to report under subsection (b)** in the capacity as a
> member of the staff of a medical or other public or private
> institution, school, facility or agency, **that person shall report**
> **immediately in accordance with section 6313 and shall**
> **immediately thereafter notify the person in charge of the**
> **institution**, school, facility or agency or the designated agent of the
> person in charge. Upon notification, the person in charge or the
> designated agent, if any, shall facilitate the cooperation of the
> institution, school, facility or agency with the investigation of the
> report. Any intimidation, retaliation or obstruction in the
> investigation of the report is subject to the provisions of 18 Pa.C.S.
> § 4958 (relating to intimidation, retaliation or obstruction in child
> abuse cases). This chapter does not require more than one report
> from any such institution, school, facility or agency.

*Id.* § 6311(c) (emphasis added).

71.     At all relevant times, Philadelphia FIGHT undertook to prevent child abuse and

neglect (including further child abuse) of its patients, including Hope.

72.     At all relevant times, Philadelphia FIGHT undertook to train, monitor, and supervise its employees, including Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski, regarding the reporting of suspected child abuse.

73.     The purpose of training, monitoring, and supervising Philadelphia FIGHT employees, including Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski, regarding the reporting of cases of suspected child abuse was to protect Philadelphia FIGHT's patients, including Hope Jones.

74.     Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski did not make an oral report to the Pennsylvania Department of Human Services.

75.     Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski did not make a written report to the Pennsylvania Department of Human Services.

76.     Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski did not send a summary or report of the photographs they took to the Pennsylvania Department of Human Services.

77.     Dr. Cruz, Dr. Knoflicek, RN Lewis, RN Martin, and RN Perzanowski did not follow Philadelphia FIGHT's policies and/or procedures relating to reporting suspected child abuse.

78.     Defendant, United States of America d/b/a Philadelphia FIGHT, and/or all agents, servants and employees involved in the medical treatment described above, came into contact with Hope in the course of employment, occupation or practice of medicine.

79.     At all relevant times, Hope was under Philadelphia FIGHT's care, supervision, guidance or training.

80.     Defendant, United States of America, acting through its deemed federal employees at Philadelphia FIGHT Community Health had a reasonable cause to suspect, on the basis of medical training and experience, that Hope was a victim of child neglect and/or abuse.

81.     Defendant, United States of America, acting through its deemed federal employees at Philadelphia FIGHT Community Health Centers violated Pennsylvania's Child Protective Services Law, 23 Pa. C.S. §§ 6301 et seq. (in effect at the time of this incident), by failing to properly report suspected child neglect and abuse on or after January 29, 2021.

82.     Defendant, United States of America, acting through its deemed federal employees at Philadelphia FIGHT Community Health Centers violated Pennsylvania's Child Protective Services Law, 23 Pa. C.S. §§ 6301 et seq. (in effect at the time of this incident), by failing to properly report suspected child neglect and abuse on or after May 24, 2021.

83.     Defendant, United States of America, acting through its deemed federal employees at Philadelphia FIGHT Community Health violated Pennsylvania's Child Protective Services Law, 23 Pa. C.S. §§ 6301 et seq. (in effect at the time of this incident), by failing to properly report suspected child neglect and abuse on or after November 24, 2021.

84.     Defendant, United States of America, acting through its deemed federal employees at Philadelphia FIGHT Community Health Centers violated Pennsylvania's Child Protective Services Law, 23 Pa. C.S. §§ 6301 et seq. (in effect at the time of this incident), by failing to properly report suspected child neglect and abuse on or after June 1, 2022.

85.     Defendant, United States of America, acting through its deemed federal employees at Philadelphia FIGHT Community Health Centers violated Pennsylvania's Child Protective Services Law, 23 Pa. C.S. §§ 6301 et seq. (in effect at the time of this incident), by

failing to properly report suspected child neglect and abuse between January 2021 and June 2022.

86.    Defendant, United States of America, acting through its deemed federal employees at Philadelphia FIGHT Community Health Centers failed to comply with Pennsylvania's Child Protective Services Law on one or more of the following respects:

    a.    Failing to make a report of suspected child abuse despite having reasonable cause to suspect that Hope was a victim of child abuse;

    b.    Failing to make an oral report to the Pennsylvania Department of Human Services; and,

    c.    Failing to make a written report to the Pennsylvania Department of Human Services.

87.    As a direct and proximate consequence of Defendant's statutory violation, the Decedent suffered severe pain and suffering, severe emotional distress and mental anguish, hospital and medical expenses, loss of enjoyment of life's pleasures, death, loss of future earnings and all damages available under Pennsylvania law.

**WHEREFORE**, Plaintiff respectfully demands judgment in their favor and against Defendant, individually, jointly and severally, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages and such other relief as this Honorable Court may deem appropriate.

### FIRST CAUSE OF ACTION – WRONGFUL DEATH
### Plaintiff Kristen L. Behrens, Esquire, as Administratrix of the Estate of H.J., Deceased v. United States of America d/b/a Philadelphia FIGHT

88.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

89.     Decedent Hope Jones left surviving her the following persons who may be entitled to recover for damages under the Wrongful Death Act:

        d.   Gino Laws (father)

        e.   P.J. (minor sibling)

        f.   L.J. (minor sibling)

90.     Plaintiff Kristen L. Behrens, Esquire, as Administratrix of Decedent's estate, brings this Wrongful Death Action on behalf of the beneficiaries under and by virtue of the Acts of 1855, P.L. 309, as amended, 42 Pa. C.S.A. 8301, the applicable Rules of Civil Procedure and decisional law.

91.     As a result of the negligent and careless acts and omissions of the Defendant, as set forth above, Decedent Hope Jones was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Wrongful Death Act.

92.     Plaintiff Kristen L. Behrens, Esquire, as Administratrix of Decedent's estate, claims all recoverable damages under the Wrongful Death Act.

**WHEREFORE**, Plaintiff respectfully demands judgment in their favor and against Defendant, individually, jointly and severally, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages and such other relief as this Honorable Court may deem appropriate.

### SECOND CAUSE OF ACTION – SURVIVAL ACTION
**Plaintiff Kristen L. Behrens, Esquire, as Administratrix of the Estate of H.J., Deceased v. United States of America d/b/a Philadelphia FIGHT**

93.     Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

94.     Plaintiff Kristen L. Behrens, Esquire, as Administratrix of Decedent's estate, brings this claim under the Survival Act, 42 Pa. C.S. § 8302, the applicable Rules of Civil Procedure, and decisional law.

95.     All persons entitled to share in Decedent's estate are Decedent's survivors under the Act: her father, Gino Laws, and her two minor siblings, P.J. and L.J.

96.     As a result of the negligence, wrongful conduct and misconduct of Defendant, as set forth above, Hope Jones was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Survival Act.

97.     Plaintiff Kristen L. Behrens, Esquire, as Administratrix of Decedent's estate, and on behalf of Survival Act beneficiaries claims all damages recoverable under the Survival Act, including damages for Decedent's conscious pain and suffering as a result of Defendant's negligence up to and including the time of her death, the net amount of money Decedent would have earned between the date of her death and today, and the amount of money Decedent would have earned between today and the end of her life expectancy.

**WHEREFORE**, Plaintiff respectfully demands judgment in their favor and against Defendant, individually, jointly and severally, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages and such other relief as this Honorable Court may deem appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Dated: <u>November 21, 2025</u>          BY: _____

NADEEM A. BEZAR, ESQUIRE
PA 63577
Nadeem.Bezar@KlineSpecter.com

SHERRELL L. DANDY, ESQUIRE
PA 309348
Sherrell.Dandy@KlineSpecter.com

Attorneys for Plaintiff
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
(215) 792-5608